(C. D. 1078)

CLOSE & STEWART *v.* UNITED STATES

United States Customs Court, Second Division

(Decided January 8, 1948)

Lawrence & Tuttle (George R. Tuttle and Chas. J. Evans of counsel) for the plaintiff.
Paul P. Rao, Assistant Attorney General (Harold L. Grossman, Richard F. Weeks, and Joseph E. Weil, special attorneys), for the defendant.

Before TILSON and KINCHELOE, Judges; LAWRENCE, J., not participating

KINCHELOE, Judge: The merchandise here in issue was imported from Mexico and is invoiced as 500 rolls ixtle de palma cloth. It was classified and assessed for duty as woven fabrics of vegetable fiber, except cotton, not specially provided for, at 20 per centum ad valorem under paragraph 1010 of the Tariff Act of 1930, as modified by the trade agreement with the United Kingdom, T. D. 49753. It is claimed to be dutiable at six-tenths of 1 cent per square yard under the provisions of paragraph 1019 of said act, reading as follows:

PAR. 1019. Bagging for cotton, gunny cloth, and similar fabrics, suitable for covering cotton, composed of single yarns made of jute, jute butts, or other vegetable fiber, not bleached, dyed, colored, stained, painted, or printed, not exceeding sixteen threads to the square inch, counting the warp and filling, and weighing not less than fifteen ounces nor more than thirty-two ounces per square yard * * *.

A further claim was made by amendment of the protest. (R. 2) that the merchandise was dutiable at 10 per centum ad valorem under paragraph 1558 of said act, as modified by the trade agreement with Mexico, T. D. 50797, which claim has been abandoned by counsel for plaintiff in its brief.

According to the red-ink notation of the examiner on the invoice, the ixtle cloth in question is composed of single yarns, has a thread count of fourteen to the square inch, counting the warp and filling, and weighs nineteen ounces per square yard. The ixtle fiber cloth is further shown not to be bleached, dyed, colored, stained, painted, or printed, with the exception of having one colored single-ply yarn running along the center of the fabric, which can be disregarded. Note United States v. Bryant & Beinecke, 10 Ct. Cust. Appls. 79, T. D. 38355.

The merchandise here under consideration, therefore, would seem to come within all the specifications of said paragraph 1019 for

"Bagging for cotton, gunny cloth, and similar fabrics" made of "jute, jute butts, or other vegetable fiber," providing it is also "suitable for covering cotton," which fact is denied by the Government, and which question is apparently the only issue in the case.

A representative sample of the merchandise was introduced in evidence by the plaintiff and marked "Exhibit 3."

On the question of the suitability of the imported merchandise for covering cotton, the plaintiff has introduced the testimony of G. A. Gumbrecht, an importer for 30 years, associated with the firm of Henry W. Peabody & Co., importer of cotton, sisal, burlap, jute, and a general line of raw materials, and who is a partner in charge of its San Francisco office. He stated he travels throughout the United States three or four times a year, and has dealt in cotton for 20 years. Mr. Gumbrecht identified exhibit 3 as palma ixtle cloth from Mexico. He stated he was familiar with that class of goods, had observed its use as coverings for cotton fibers or cotton linters, and had seen it on cotton imported by his firm from Mexico (R. 12). In his experience, fabrics like exhibit 3 have been used in covering bales of cotton for about 8 years. He stated they are similar to gunny cloth in weight and weave, although of heavier weave, and have the same uses, being imported in varying weights for upholstery, baling hops, for agricultural bags, but for bagging mainly (R. 14/15); that in his opinion the fabric is entirely suitable for covering cotton; that it is used exclusively for that purpose in certain parts of the world, and that in Mexico they use nothing else (R. 15). The witness further stated that in the south, where cotton is grown, they use numerous types of materials for coverings, such as second-hand bagging, and they make a patch out of the jute from India for patches, but he did not notice them using merchandise like exhibit 3 (R. 17). From 1937 to 1943, he saw merchandise like exhibit 3 used as a covering for cotton "along the border" on the Mexican side, and on the American side for covering cotton linters; that he has seen this cloth used on staple cotton extensively on the Mexican side (R. 22), but that its use on staple cotton on the American side was rare and unusual (R. 22/23); that on the Mexican side of the border it was extensively used on Mexican cotton exported to the United States (R. 23). He further testified that bales of cotton are handled with hooks and hand trucks, and that the covering must be sturdy and strong; that strength is the principal element; that prior to the war, merchandise like exhibit 3 was commonly used in Mexico for covering cotton, and Mexican cotton covering fabric like exhibit 3 was commonly imported into the United States (R. 26).

Mr. N. Polkinhorn, another witness for plaintiff, has been a customs broker at Calexico, Calif., for 26 years. He testified that during that time he has handled baled cotton imported into the United States through Mexicali, Mexico, and the movement to other parts of

Mexico of fabrics intended for use in the baling of cotton; that he has handled for his clients that particular class of merchandise for the past 10 years; that his clients have been Geo. H. McFadden Brothers, who has offices all over the United States, Anderson, Clayton Co., Compañia Importador y Exportador, and other firms who were importers of cotton, and he has seen the bales of cotton coming in from Mexico (R. 32). He stated further that for customs purposes it was necessary for him to know the identity of the fabric used to cover such cotton; that it is called palma bagging; and that exhibit 3 "is the same stuff." (R. 35.) He reaffirmed that he handled the customs brokerage matters of Geo. H. McFadden Brothers, exporter of cotton from Mexico to the United States; that this firm did not export any cotton in 1944 and 1945, and that he did not handle any for it during that period except its quota, because all the cotton was controlled by the Mexican Government through the Compañia Importador y Exportador, but that he did handle 20,000 or 25,000 bales for the Compañia; that he personally examined such bales, and that he was certain the cloth used to cover the cotton was similar to exhibit 3 (R. 36/37). That prior to 1944, he handled several thousand bales a year and about 25 per centum was covered with bagging similar to exhibit 3, the remainder being covered by American bagging, which he stated was entirely different, being jute bagging, more open, and with not such a close weave; that more bagging like exhibit 3 is being used now, and that in 1944 and 1945, about 25 to 30 per centum of the bales of cotton was covered with fabric like exhibit 3 (R.38/40); that he has known ixtle de palma cloth to be used as a covering for cotton in Mexico as far back as 1921 (R. 41).

In *Kahlen* v. *United States*, 2 Ct. Cust. Appls. 206, T. D. 31947, our appellate court, in passing on the suitability of onionskin paper for printing purposes under paragraph 402 of the Tariff Act of 1897, stated:

* * * From the fact that a thing may be used or has been used for a particular end it does not necessarily follow that it is commercially suitable therefor, and evidence of a casual, incidental, exceptional, or possible use of a thing can not be accepted as proof of its suitability for such use. A house may be built of ice or of paper, but in this country at least such materials would hardly be regarded as suitable building materials. A thing to be suitable, as that term is commonly understood, must be fit and appropriate for the end to which it is to be devoted. In the tariff law the term "suitable" means actually, practically, and commercially fit.

The foregoing definition of "suitable" was quoted with approval in *United States* v. *Lorsch*, 8 Ct. Cust. Appls. 109, T. D. 37222, wherein it was further held that "actually," or "practically," or "commercially," or "commonly," fit for or used as, in no sense implies or requires chief use. Note also *United States* v. *Bernard, Judae & Co.*, 15 id. 424, T. D. 42593.

It would, therefore, seem well-established that for an article to be "suitable" for a certain use under the tariff law, it must be actually, practically, and commercially fit for such use, with the further qualification, however, that the classification of imported merchandise must be governed by its use in this country. As said by the court in the syllabus in *H. Boker & Co.* v. *United States*, 19 C. C. P. A. 27, T. D. 44870:

* * * The use which has been made of them [the imported articles] in foreign countries is no guide to their classification here. Our tariff laws are made for the conditions in this country, and not those in foreign ones.

In the present instance there is no evidence whatever of any *actual* use of the imported ixtle fiber cloth as bagging for covering cotton in this country at any time, although plaintiff's witness Polkinhorn stated that he has known it to be so used in Mexico as far back as 1921 (R. 41). And it is true that plaintiff's witness Gumbrecht stated that in his opinion the merchandise in question was entirely satisfactory for covering cotton. But while it may well be so suitable in Mexico, any conclusion that it is actually, practically, and commercially fit for such use in this country is not borne out by the record. The same witness testified that merchandise like the imported was used in this country to a limited extent on cotton linters, but then apparently only by reusing second-hand ixtle coffee bags and other bags from South America and cutting them up into patches for cotton linters, which, however, as stated by the witness, "is a very definite commodity as differentiated from staple cotton." (R. 22.) We cannot see, however, what relevancy or bearing the use of such cut-up pieces of second-hand bags as patches on bales of linters has on the question of the suitability or commercial fitness of the new ixtle cloth in question for covering cotton.

Under the circumstances, we hardly think it necessary to discuss the testimony herein in further detail, as it obviously fails to show that the imported merchandise is actually, practically, and commercially suitable for covering cotton in this country under the principles enunciated in the cases cited, *supra.*

It follows that the claim of the plaintiff must be, and hereby is, overruled, and the action of the collector affirmed.

Judgment will be rendered accordingly.